Case 12-1897, Daniel Corral v. USA. Oral argument not to exceed 15 minutes per side. Mr. Eman for the appellant. Morning. Morning. May it please the Court. My name is Frank Eman. I represent Daniel Corral on this appeal from Judge Cohen's denial of a 2255 petition in the Eastern District of Michigan. I'd like to reserve three minutes for rebuttal, if I may. That's fine, and you may proceed. Thank you. Although there are multiple issues raised in my brief, it's really a single-issue case, a single issue at heart, and the issue is whether Mr. Corral was indicted in two different districts for the exact same conspiracy. The conspiracy has a name, a colorful name, no pun intended, the Black Mafia family. It's clear from DEA press releases, it's clear from other matters that both indictments were indicting members of the Black Mafia family. In Detroit, they named the Black Mafia family in the indictment. In the Los Angeles indictment, they did not. But there are two DEA press releases that were filed with the District Court, which make it very clear that the indictment in Los Angeles is part of the Black Mafia family. At page 145 and 146 of our appendix, I quote from a press release out of Atlanta from the DEA, a federal judge has sentenced 10 of the 16 defendants indicted for their participation in the cocaine distribution activities of the Black Mafia family. It goes on to say, the focus of federal prosecution in Atlanta, Detroit, Los Angeles, Louisville, Orlando, and elsewhere. And again, at page 146, the two defendants who were indicted in Detroit, I think Demetrius Flannery and Terry Lee Flannery, are named in the DEA press release as members of the Black Mafia family. And in the government's appendix, page 12, the press release that I filed attached to my reply brief, it begins to indicate that in Los Angeles, they charged 20 alleged members and associates of the Campanella Park, Peru, Blood Street gang and alleged members of the Black Mafia family, known as BMF, a gang with roots in Detroit, Michigan. What's your best evidence that these are both the same conspiracies? Is it the dates or is it the members named or something else that I haven't caught? Well, the problem with this case is the best evidence that they're the same conspiracies is outside the actual indictments. Sometimes when you're looking at it to determine whether indictments charge the same conspiracy twice, you need to look beyond the indictment. How would you do that? If you win your case, how would you go about doing it? Well, in the Tercero case, which I cite in my brief, and in the Kelly case, which is a Sixth Circuit case I cite in my brief, they looked at grand jury testimony. And in this case, I think they could look at discovery material as well. And one of the flaws of the district court opinion in this case is that the district court failed to look beyond two bare bones indictments. The indictment in Detroit didn't even allege any overt acts of Daniel Correll. So how can a court compare the indictment in Detroit with the indictment in L.A. to determine whether or not he's being charged for the same thing he did in L.A.? You would have something similar just to a regular trial then. You would have a... What you're saying. You need an evidentiary hearing. The threshold for an evidentiary hearing in a 2255 petition is relatively low. It's a question of fact whether two conspiracies are the same conspiracy or different conspiracies. If you're at a jury trial, the jury can resolve that or the judge can resolve that on motion based on the evidence. But we are just looking at two bare bones indictments. You have to look beyond the indictments. We tried to give the judge some information from the DEA press releases that made it clear that the black mafia family was being indicted in multiple cities all around the country. And that Mr. Correll was only one of two people who were indicted twice in L.A. and also Detroit. We look beyond the indictments. I guess Judge Silas is asking this question as well. So there are two people who were named in both indictments, right? Correct. What about other sort of co-conspirators? I mean, there are, as I recall, 40, 50 or so co-conspirators. Do we know the extent to which there is some commonality or overlap in terms of the people involved? Beyond those two people, there is not overlap in the people named. But not only the people named, but I guess, is there any way to know otherwise? Yes. Yes, the discovery material would reveal. I mean, I alleged in my petition that there's same conspiracy involving the same people. And that allegation was not based on fantasy. That's based on my review of the discovery material, but I never had a chance to have a hearing and present all of that. Discovery material that was already in the record or that... No. That is to be determined. Discovery material that I would have liked to have presented to the district court had the district court granted my request for a hearing to show the district court that the people named in Los Angeles overlapped with the people in Detroit. Now, just as a practical aspect of this case, I'm sure you're a highly experienced counsel. Assuming that you win this issue, you go back, what you're wanting is an evidentiary hearing. Suppose you win that and that the claim of a conspiracy in Michigan is set aside. You still have the money laundering. Correct. And the guidelines from reading the president's report for money laundering are even greater than the conspiracy to distribute cocaine. And looks like your client would just be right back in the same hole because he'd get 120 months. Well, there is no mandatory minimum on the money laundering. And if you read the sentencing transcript, Judge Cohen asked repeatedly to the government, why aren't you requesting that I can go below the mandatory minimum in this case, given the extent of his cooperation? In this major case, he was released on bond. And there was a reason for that. It's because he was working in this case. But the court could give him 120 again, right? It could. It could also give him something lower. But as we point out, the court pronounced... It could. It could. Your client knows that. My client understands that, yes, Your Honor. Okay. Yes. But let me just say that the court... One of the issues we also raised, which is interrelated with the question you ask, is that the judge did not pronounce a specific sentence for the money laundering count. He pronounced a single sentence of 120 months according to the transcript. And he did not differentiate between counts on that. So when the judgment was entered, the clerk entered 120 months for the money laundering, even though he never pronounced it. Also, there's plenty of authority to say that if one of several counts is vacated, as you point out, we would have a right to have resentencing on the money laundering count. We're willing to take that risk, given Judge Cone's attitude about wanting to go below the mandatory minimum, but the government not requesting it in this case, although they did request it in Los Angeles. There's one other thing to answer your questions about what points to the same conspiracies. We have an admission from the U.S. attorney on the record, at the time of sentence, when they were discussing whether or not the defendant was going to be released, continue to be released on bond and turn himself in. They were talking about that he had a turn in date on the Los Angeles case. And the judge said, what's this Los Angeles case? And the U.S. attorney answered, it's the same, the same conspiracy involving the same defendants. So that admission has to count for something, and I think it counts for a lot. And I would say, as you look at the declaration of Mr. Krieger, the defense counsel in this case, that that declaration woke him up. The two things woke him up. One, when his decision to pursue cooperation did not result in a reduction in the mandatory minimum, as it had in Los Angeles. And two, when the U.S. attorney said, oh, that's the same conspiracy. I think a light bulb went off and said, this was double jeopardy, and I failed to object. And that's why he provided us with this declaration, and that's why we went forward with the 2255. I think that, as I say, all the other issues are interrelated here. The venue change is also an issue that could have been raised, since there were no overt acts charged against Mr. Carell in the indictment. And although we haven't briefed this, my understanding is in a drug conspiracy case, you don't actually have to prove an overt act. Which explains why they may not have alleged any against Mr. Carell. I think all of Mr. Carell's actions, all of his activities, everything that he did in connection with this organization, occurred in California and Los Angeles. And one of the things you look at is the defendant's substantial context. Did he have any context with this district? And I would suggest that he did not have any context with this district, as we allege in our petition. You mean he wasn't even in Ohio at all? Detroit. Or I mean Detroit. Yes. He was never there. Are you trying to rub in the football game results from... All right. No. He was not in Detroit, Your Honor. And I think the discovery would show that. And there are no allegations in the indictment that he ever was in Detroit. If somebody did something there in Detroit, that would give you proper venue, right? If he was in... Well, if somebody did something, yes. But the question is, is there a proper venue as to him if he had no context with Detroit? I think if you look at the Williams case, where they tried to indict somebody in Kentucky, I want to say, for actions he did in Texas where he had no context with Kentucky, although there was a co-conspirator who did have context with Kentucky, this court, I think an opinion by Judge Ryan, found that venue was improper. Let me address what I think is wrong with the district court's opinion in this case. There are several things that I believe the district court was erroneous in its conclusions. The first is the overlapping of times. The district court found there were different times here. Actually, the times completely overlap, except for a few months. The Los Angeles indictment alleged that the time period was from an unknown time to November of 2007. And of course, the times in the indictment always end at the time the indictment is filed. And the indictment was filed in November of 2007. The Detroit indictment alleged that it began in 1990 and went to April 2008. Now, that's an overlapping time period. In fact, that's an 18-year period alleged in the Detroit indictment. Also, the judge, again, just looked to the people named in the indictment and not beyond the actual indictment. The judge found that there were different drugs alleged in Los Angeles involving this conspiracy. But Mr. Correll's involvement, as he pled both in Los Angeles and Detroit, only involved the drug cocaine. He was not involved in any other drug transactions here. But most importantly, what the district judge did not do in this case is look at any cases which determined whether there's more than one conspiracy. He looked at double jeopardy cases and the five-factor test under Sanito. He applied Gibbons, which was a case which decided whether two counts in the same indictment were double jeopardy. But he never looked at a case like Wheeler, which found that there were two separate indictments charging the same offense. And he never looked at any cases which discussed, like Kelly, whether or not there was more than one conspiracy charged. I see my time is running out. If the court has any questions? Well, yeah, would you address briefly your argument that there was ineffective assistance of counsel here? Yes, the ineffective assistance of counsel, again, is wrapped into the failure to make a motion to dismiss for double jeopardy. And it's also wrapped into the prosecutorial vindictiveness argument. As Mr. Krieger declares in his declaration, he was told that if he filed a motion to dismiss for double jeopardy, the government would take cooperation off the table and Mr. Correll would be facing these high guidelines. So he was in a conundrum, but nonetheless didn't file the motion. And if the motion is filed and granted, the case is dismissed. So as to the prosecutorial vindictiveness argument, has that been procedurally defaulted? That's the argument that the government makes. Well, the government makes procedural default arguments, but the court found that ineffective assistance of counsel excuses procedural default, and the government has not cross-appealed on that issue. So I don't think that issue is properly before the court, whether there's procedural default. Thank you. Thank you. Good morning. May it please the court. My name is Margaret Marie Smith. I am here representing the United States. Defense counsel has misframed the issue here. The issue is not whether the defendants received a violation of double jeopardy. The issue here is whether counsel was ineffective for failing to raise a double jeopardy issue. The district court found, and the government has argued, that he procedurally defaulted his double jeopardy claim, his sentencing claim, his venue claim, and his prosecutorial vindictiveness claim for failure to raise them on direct appeal.  Whether counsel was ineffective for failing to file such motions. What I would like to do is first focus on why the California indictment is a separate and distinct conspiracy alleged, as opposed to the Michigan indictment, and then briefly address the vindictive prosecution argument. The district court correctly held that the defendant's plea-based conviction did not violate double jeopardy, and this circuit's five-factor totality test demonstrates that these were two separate conspiracies. Today, the defense attorney has argued that there is discovery material that would show that these two conspiracies overlapped. But the time to file that would have been with his 2255 motion, where he was free to attach as many exhibits as he felt necessary to present his claim. But doesn't the record show that there was significant overlap, that the Michigan indictment charged offenses occurring from January 1, 1990 until April 2008, and the California indictment charged offenses from an unknown date to November 1, 2007? No, we don't know what that unknown date is, but that would certainly suggest that there is a significant overlap in terms of the time frame, wouldn't it? I don't know that significant is the way to characterize it. Okay. There is at least some overlap. I agree. The fact that, and I'd like to, that is one of the five factors, and this court is how that where several factors differ, the conclusion is that they are separate. I think that the biggest mischaracterization of this case is that the California indictment and the Michigan indictment involved members of the black mafia family. The Michigan indictment alleged, as part of its general allegations, that that conspiracy was spearheaded by the Flannery brothers, who deemed themselves the black family mafia. The defendant himself was not alleged to be a member of that conspiracy. Rather, he was a distributor to that conspiracy. He was also a distributor to this separate California conspiracy. The persons acting as co-conspirators in each indictment are different. There were 50 people charged, and only two were named in both indictments. One of them was Mr. Corral. I'm sorry? One of them was the petitioner, right? I'm sorry. One of those named in each indictment was the person who's the petitioner in this case, right? Correct. Correct. Plus one other person. That is correct. The statutory offenses charged also support that these were two different and distinct conspiracies. The Michigan indictment alleged conspiracy of possession with intent to distribute cocaine and conspiracy to launder money. And that method of laundering money had to do with property purchases and purchasing winning lottery tickets in Michigan. The California conspiracy, on the other hand, involved cocaine, crack cocaine, heroin, PCP, and marijuana. The members of the California conspiracy were alleged to have been using coded language and using firearms in furtherance of that conspiracy. And in fact, the California indictment alleged specifically that the defendant distributed, as part of the conspiracy, distributed cocaine in St. Louis, Missouri. The places where the events were alleged to have taken place are also different in both indictments. There is some overlap between the states, but these two conspiracies were large-scale conspiracies, and the defendant, for his role, was a distributor in both of these conspiracies. It is not unusual for a large-scale drug distributor of the type that this defendant was to have his hand in more than one drug trafficking organization. The defendant has alleged that the prosecutor admitted that these were two, one and the same conspiracy by some comments that she made at sentencing. And as I argued in my brief, if you look at the transcript, that is not what she said. The defense attorney was requesting a concurrent sentence with the California sentence, which, in fact, was granted. And the court was asking if the other case was federal, and she answered yes. And then he continued to ask, what's the offense? And her answer was, it's the same, meaning it's the same offense. It was possession with intent to distribute an 841 and 846 charge. To say that she made an admission that it was the same conspiracy is simply wrong. And this goes into the vindictive prosecution issue, because if you read the defense attorney's affidavit, he says that he brought the issue of the double jeopardy to this prosecutor's attention, and her response was, I don't agree with your position. And then she, that it's one and the same conspiracy. And he further stated in his affidavit that she said to him, if you want to litigate these issues, I'm not interested in cooperation. Nobody has alleged that the government refused to negotiate a plea agreement, but the government did make it clear and is perfectly able to do so in the bargaining process to say, you're either all in or you're not. If you want to come to the table and cooperate, the first step is admission of guilt. And if you want to fight every single step of the way, I'm not interested in cooperating. The government should allow him at least to pursue constitutional issues, should it not? The government did not prevent this defendant from filing any motions. And so his claim that there was vindictive prosecution is a non-starter, because he never exercised his protected right, which would be to file a motion to dismiss. He never did it. So even if you could argue for the sake of this argument that he couldn't do so because of the threats by the prosecutor, the defendant hasn't identified any stake in these proceedings, nor has he identified any unreasonableness of the prosecutor's conduct. What ended up happening in this case was the defendant had a 292 to 365-month guideline range. The parties agreed in a written cooperation agreement that the government would recommend a sentence of 131 to 163 months, which was more than 50 percent below his guideline range. He got less than that. He got less than that, Your Honor, and he didn't even have to testify in court on this case. Not only did he get 120 months, the defense attorney convinced the judge to run it concurrently with the California sentence, which means he netted a 74-month sentence on this case. What's it going to do if this double jeopardy issue is upheld and it goes back to laundering? Where do we go with that? I can't predict how the court will sentence on that case, but he still has this money laundering issue, and that also would support the government's argument that counsel was not ineffective for failing to move for a change in venue, and I think that defense counsel is mistaken when he says that if that change of venue had been granted, the cases would have merged. It simply doesn't work that way. If the defendant's granted a change of venue for the purpose of moving the case, the case is docketed in California. It doesn't merge. The only way to merge these two cases is under a Rule 20 transfer order where both U.S. attorneys from each office agree to globally resolve the case. So for the venue issue, the defendant can't show that counsel was ineffective for failing to file such motion because he still would have had to deal with the money laundering conspiracy, and even if he were granted a change of venue, it wouldn't change the circumstances in which he found himself. Well, was there venue on that charge? Counsel indicates that Mr. Corral was never in Michigan, and nothing ever happened in Michigan, and therefore it should never have been brought there in the first place. Venue was proper, and we argued in our brief that venue was proper because the conspiracy involved, it did run across multiple states, but the defendant was distributing drugs to people, including in Detroit, and he admitted through his plea that he was involved in this conspiracy. What was that? Was the laundering done in Michigan, or was that all done in California? The laundering was done in Michigan, Your Honor, by purchasing Michigan lottery tickets as well as Michigan property. Unless the court has any other questions, I would ask that you affirm the district court's denial of this defendant's motion, and I will yield the rest of my time to the court. What about his argument that it really should have an evidentiary hearing, and that petitioners should be allowed to have discovery and all this stuff? Is that a proper way to look at it? It's not necessary in this case, and the district court correctly found that what had been submitted to the court was enough to make the determination that these were two separate conspiracies. And like I indicated before, the defense counsel's representing that he has the documents ready to go. They should have been attached to the 2255 petition if there was an indication that there was more than what was in the original papers. What defense counsel is looking for is some sort of a fishing expedition, frankly, to try to connect these two conspiracies, and it's simply not there. The judge correctly denied an evidentiary hearing because it was not necessary. Okay. Well, thank you, Ms. Smith. Counsel is correct that this is an ineffective assistance of counsel claim. That's what you bring in a 2255 petition where counsel fails to do something they're supposed to do. But the judge, which the judge can do, truncated the analysis of the ineffectiveness claim by going to the merits of the underlying issue, the issue which should have been raised by counsel, finding them to be not valid, and in his opinion saying, therefore, there couldn't have been ineffective assistance of counsel because there was no double jeopardy or any other issue that counsel should have raised, including prosecutorial vindictiveness. So there's really never been an analysis of ineffective assistance of counsel under the Strickland standard in the district court on this because the district court found the underlying claims not to be valid, which we suggest is a serious error here because of the analysis of the court was flawed. If there is a valid double jeopardy claim raised in this case, or a venue claim, or a prosecutorial vindictiveness claim, if those are valid claims here, then the court needs to address whether counsel was ineffective for failure to raise those claims. But the court never got to that point. So we don't get to that point either based on this appeal on the record as it stands now. In terms of discovery material being attached, there's a huge appendix in this case. I'm not going to file 5,000 pages of discovery material with the petition 2255. I will make the allegation that there's the same conspiracy, and I've got a statement on a record by the U.S. attorney here. This is the same conspiracy involving the same individuals. An admission which the district judge never credited, never mentioned, never discussed in his opinion at all. Which they now try to say, well, that's not really what she meant to say. Well, it is what she meant to say. She knows the discovery material as well as anybody else does. And nobody, the U.S. attorney to this moment, has never acknowledged these DEA press releases except to say, well, there's no date on them. They won't say, yes, our law enforcement agency, the DEA, issued two press releases saying the black mafia family is a multi-state conspiracy with roots in Detroit, Michigan, has been indicted in California, Atlanta, and Detroit. Which is true, but they won't acknowledge it. They won't mention it. They won't discuss it. And Judge Seiler, to pick up on your comment, the U.S. attorney says, well, no, if the defendant won't admit his guilt and not willing to step right up and cooperate, why should we give him cooperation if he's going to file some motion? Well, he wasn't going to deny admission of guilt. He had already admitted it in Los Angeles. The question was, after admitting it in Los Angeles and cooperating, now he's indicted in Detroit. Should a motion have been filed for double jeopardy? And the prosecutor basically punished him for attempting to exercise a constitutional right. The prosecutor should allow the defendant to assert his constitutional rights. It has nothing to do whether he's willing to admit his involvement or admission of guilt. He did not have to testify. I think if you look at the sentencing hearing, you'll see that the attorney started to suggest that Mr. Corral's cooperation was very extensive in this case. And he didn't testify in Detroit, but he did extensively cooperate. Okay. Well, thank you, counsel, both of you, for your arguments this morning. We appreciate them. The case will be submitted, and the clerk may call the next case.